UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DENISE D. CRANMORE,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**WELLS FARGO BANK, N.A. d/b/a** )<br>**AMERICA'S SERVICING COMPANY, and** )<br>**US BANK, NATIONAL ASSOCIATION, as** )<br>Trustees for RASC, 2006-EMX9, )<br>)<br>Defendants. )<br>) | Civil Action No. 12-10243-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                              March 25, 2013

### I.   Introduction

Plaintiff Denise D. Cranmore ("Cranmore") brings this action against Defendant Wells Fargo Bank, N.A., identified as Wells Fargo d/b/a America's Servicing Company ("Wells Fargo") stating one count for violations of Mass. Gen. L. c. 93A and 940 C.M.R. § 8.06 ("Count I"), and against Defendant US Bank as Trustee for RASC, 2006-EMX9 ("US Bank") alleging that US Bank "is not authorized to foreclose on [Cranmore]'s property under Massachusetts law" ("Count II").  D. 21.  Wells Fargo and US Bank (collectively, "Defendants") have jointly moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and to dissolve an injunction now in place prohibiting US Bank from foreclosing on Cranmore's residence.  For the reasons set forth below, Defendants' motion to dismiss Counts I is GRANTED in part and DENIED in part, the motion to dismiss Count II is GRANTED and the injunction against US Bank is DISSOLVED.

**II.     Background**

The Court accepts all non-conclusory facts alleged in Cranmore's amended complaint, D. 21, as true, Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011), and "draw[s] all reasonable inferences in favor of the plaintiff[]." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009). Cranmore resides at 176 Brush Hill Road in Milton, Massachusetts ("the property") which she refinanced in 2006. ¶¶ 3-4, 7.[1] Defendant Wells Fargo assumed and claimed ownership of Cranmore's mortgage and note in February 2007. ¶ 9. In 2008, the introductory interest rate on the note expired and Cranmore's monthly mortgage payments increased to an amount beyond what she expected or could afford. ¶¶ 10-11.

**A.     The First Forbearance Agreement (2008)**

In 2008, Cranmore contacted Defendant Wells Fargo to negotiate a loan modification. ¶ 12. She negotiated the loan modification over the course of several phone conversations. ¶ 12. By December 2008, Cranmore was delinquent on her mortgage payments by four months. ¶ 13. On or about December 10, 2008, Defendant Wells Fargo sent Cranmore a "Special Forbearance Agreement" ("2008 Forbearance Agreement") which Cranmore believed to be an offer of a loan modification after a forbearance period of trial payments. ¶ 14. Cranmore spoke on the telephone with a representative from Defendant Wells Fargo who confirmed Cranmore's understanding that her compliance with the proposed forbearance agreement would result in a loan modification and prevent foreclosure on her home. ¶ 15.

---

[1] All paragraph references are to Cranmore's amended complaint, D. 21, unless otherwise indicated.

The 2008 Forbearance Agreement, D. 16 Exh. 4 at 17-18,[2] sets forth three steps for Cranmore to avoid foreclosure through forbearance and then loan modification. ¶ 16. Those steps were:

> Step One:  Payments must be made strictly in accordance with the enclosed payment schedule and forbearance agreement conditions, [sic] this plan will take care of some of your delinquency.  This plan is an agreement to temporarily accept reduced payments or maintain regular monthly payments during the plan specified below, [sic] please note the final delinquency balloon payment will be added back into the loan balance if approved for the loan modification.  Step Two:  Upon successful completion of the outlined payments, your loan will be reviewed for a Loan Modification.  Step Three:  Your loan will be modified, unless your income or financial situation has changed.

¶¶ 17-19; D. 16 Exh. 4 at 17-18.  Cranmore understood Step 3 as a promise that her loan "will" be modified if she made payments according to schedule "unless" her situation changed.  ¶ 20. The payment schedule of the 2008 Forbearance Agreement ran from December 15, 2008 through April 15, 2009 and included four similar monthly payments of approximately $3,000.00 and a final April 15, 2009 payment of $11,722.51.  ¶ 23.

Cranmore complied with all terms of the 2008 Forbearance Agreement. ¶ 24.  Cranmore would not have agreed to the 2008 Forbearance Agreement had she understood that a loan modification would not be provided at the end of the agreement period or that she could not prevent Defendant Wells Fargo from foreclosing on her property. ¶¶ 21-22.  Cranmore alleges that "[a]t the end of the agreement period Defendant Wells Fargo did not grant Plaintiff the

---

[2] "[I]n ruling on a Rule 12(b)(6) motion, a district court 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint.'" Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (quoting and approving of language in Clorox Co. P.R. v. Proctor & Gamble Comm. Co., 228 F.3d 24, 32 (1st Cir. 2000) (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996))).  Here, the Court has considered the seven letters from Wells Fargo to Cranmore that are attached to the motion to amend her complaint, D. 16 Exh. 4, which Cranmore relies upon and quotes extensively in her amended complaint. D. 21 ¶¶ 14, 16-19, 23, 26, 28-29, 34-35, 37, 39-47, 54.

promised loan modification or provide any explanation for the denial of the loan modification. ¶ 25. "On April 26, 2009, . . . Wells Fargo notified Plaintiff in writing that her loan was in default by $3,189.23." ¶ 26. However, five days later "[o]n May 1, 2009, Wells Fargo sent Plaintiff a written 'loan modification agreement.'" ¶ 28; D. 16 Exh. 4 at 11-14 (loan modification agreement). Cranmore refused to sign the proposed agreement because its terms did not comport with her understanding of the loan modification terms previously and orally agreed to by Wells Fargo and Cranmore and she also found its terms to be contradictory. ¶¶ 28-29.

      **B.**      <u>**The Second Forbearance Agreement (2010)**</u>

In 2009 and 2010, Cranmore struggled to make full and timely payments on her mortgage and made several verbal requests to Wells Fargo for a loan modification. ¶ 27. In approximately May 2009, Cranmore learned that she would be losing her job and so she contacted Wells Fargo and "requested that it honor the December 2008 loan modification agreement." ¶ 30. Wells Fargo denied Cranmore's request for a loan modification due to Cranmore's income. ¶ 31.

On January 20, 2010, Defendant Wells Fargo "denied in writing Plaintiff's request for a loan modification because she was 'current on [her] mortgage loan' and because she had 'not documented a financial hardship that has reduced [her] income or increased [her] expenses, thereby impacting [her] ability to pay [her] mortgage as agreed.'" ¶ 34; D. 16 Exh. 4 at 9-10 (denial letter). On October 13, 2010, Defendant Wells Fargo denied, in two different letters dated October 13, 2010, Cranmore's subsequent request for a loan modification because "the investor on [her] mortgage has declined the request" and because of "the results of [her] NPV [net present value] calculation." ¶ 35; D. 16 Exh. 4 at 6-8 (denial letter regarding NPV

4

calculation). By December 1, 2010, Cranmore was behind by approximately nine monthly mortgage payments. ¶ 36.

On December 7, 2010, Defendant Wells Fargo sent Cranmore a "Special Forbearance Agreement" ("2010 Forbearance Agreement"), which Cranmore believed to be a second offer of a loan modification after a forbearance period of trial payments. ¶ 37. The 2010 Forbearance Agreement is attached to a cover letter that recites some of the same language that is in the agreement. D. 16 Exh. 4 at 4-5. After receiving the 2010 Forbearance Agreement, Cranmore spoke on the telephone with a Wells Fargo representative who told Cranmore that Wells Fargo would modify Cranmore's loan if Cranmore made all payments under the 2010 Forbearance Agreement. ¶ 38.

Although Cranmore alleges that the terms of the 2010 Forbearance Agreement are similar to those in 2008 Forbearance Agreement, ¶ 39, unlike the 2008 version, there are some differences. The 2010 version contains no language stating that Wells Fargo "will modify" Cranmore's loan. Compare D. 16 Exh. 4 at 17-18 (2008) with D. 16 Exh. 4 at 4-5 (2010). The 2010 Forbearance Agreement describes a four-month payment period from December 31, 2010 through March 31, 2011 during which Cranmore was to pay equal monthly payments of $2,669.45. ¶ 41. Cranmore alleges the next step as "an application for a loan modification where '[a]ny outstanding payments and fees will be reviewed for a loan modification.'" ¶ 42. The 2010 Forbearance Agreement and cover letter state that "[i]f approved for a loan modification, based on investor guidelines, this will satisfy the remaining past due payments on your loan and we will send you a loan modification agreement." ¶ 43; D. 16 Exh. 4 at 4-5. Cranmore understood this language to mean that the loan modification would subsume "any outstanding payments and fees." ¶ 43. The agreement also states, "[a]n additional contribution

may be required" and "[u]pon full reinstatement, we will instruct our foreclosure counsel to dismiss foreclosure proceedings and report to the credit bureau accordingly." ¶ 43. Cranmore states that this language is "[c]onfusing[]." ¶ 43. Cranmore also alleges that the "steps to loan modification and loan forgiveness" in the cover letter conflict with the agreement. ¶ 44.

Cranmore complied with all terms of the 2010 Forbearance Agreement. ¶ 52. However, at the end of the agreement period, Wells Fargo did not modify her loan. ¶ 53. On May 9, 2011, Wells Fargo notified Cranmore in writing that the loan modification was denied "because the investor on [her] mortgage has declined her request." ¶ 54; D. 16 Exh. 4 at 1. Cranmore would not have agreed to the 2010 Forbearance Agreement had she understood that even if she fully complied with the agreement, a loan modification would not be provided at the end of the agreement period or that she could not prevent Defendant Wells Fargo from foreclosing on her property. ¶¶ 48-49. Cranmore alleges that "[u]pon information and belief, at no time did . . . Wells Fargo intend or have the ability to modify Plaintiff's loan with the purpose of preventing foreclosure." ¶ 50. Cranmore alleges that "[u]pon information and belief, at all times Defendant Wells Fargo intended to extract final payments before foreclosure causing Plaintiff to believe that her property would not be foreclosed." ¶ 51.

### C. The Enjoined Foreclosure

On June 8, 2011, Defendant US Bank notified Cranmore that it intended to hold an auction to foreclose on the property on August 2, 2011. ¶ 55. On August 18, 2011, Cranmore sent Wells Fargo and US Bank a demand letter in compliance with Mass. Gen. L. c. 93A, § 9. ¶ 56. On December 21, 2011, US Bank sent Cranmore a Notice of Mortgagee's Sale of Real Estate. ¶ 62. The sale was scheduled for January 24, 2012. ¶ 63.

### D. Procedural History

On January 18, 2012, Cranmore filed suit in Norfolk Superior Court against US Bank and Wells Fargo. State Ct. Rec., D. 4 at 1. A Superior Court judge issued a preliminary injunction enjoining the sale pending resolution of Cranmore's complaint, ¶ 63, and ordered Cranmore to make mortgage payments into escrow. State Ct. Rec., D. 4 at 53. On February 8, 2012, the Defendants removed the case to this Court asserting 28 U.S.C. § 1332 as the jurisdictional basis, D. 1, and shortly thereafter filed a motion to dismiss, in part based on deficiencies in Cranmore's c. 93A claim. D. 5; D. 6 at 12-14. On February 27, 2012, Cranmore filed a motion to remand to state court, D. 8, which was later denied. ECF Order of May 3, 2012. Cranmore also filed an amended complaint, D. 21, in part to address deficiencies in her earlier pleading, D. 16 Exh. 2 at 3-5. In light of her amended complaint, the Court denied Defendants' first motion to dismiss as moot. D. 20. Defendants have now filed a second motion to dismiss. D. 23. Since that filing, Cranmore has agreed to the dismissal of Count II of her amended complaint against US Bank. D. 26 ¶ 7. The Court heard argument on the motion to dismiss on December 12, 2012 and took the matter under advisement. D. 33.

## III. Discussion

### A. Standard of Review

To decide a motion to dismiss, the Court must determine if the well-pled facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). On Cranmore's view of the facts, the Court should be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011). Dismissal is appropriate if Cranmore's well-pleaded facts do not "possess enough heft to show

that plaintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

> **B.     The Court Dismisses the Claim Against Wells Fargo Alleging Violations of Mass. Gen. L. c. 93A as to the 2008 Forbearance Agreement But Not as to the 2010 Forbearance Agreement**

As described further below, Cranmore alleges that Wells Fargo utilized "unfair and deceptive" trade practices in its dealings with her. Am. Compl., D. 21 ¶ 56.

### 1.     *Mass. Gen. L. c. 93A Bars "Unfair or Deceptive Acts or Practices"*

Mass. Gen. L. c. 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. c. 93A, § 2. To prevail on a c. 93A claim, the plaintiff "must prove that a person who is engaged in trade or business committed an unfair or deceptive trade practice and that the [plaintiff] suffered a loss of money or property as a result." Morris v. BAC Home Loan Servicing, L.P., 775 F. Supp. 2d 255, 259 (D. Mass. 2011) (quoting Brandon Assocs., LLC v. FailSafe Air Safety Sys. Corp., 384 F. Supp. 2d 442, 446 (D. Mass. 2005)).

Which acts or practices are "unfair" under c. 93A, depends on "(1) whether the practice . . . is within the penumbra of a common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005). "[M]ere delay in business matters, without more, is not normally "unfair" within the meaning of Chapter 93A." Maldonado v. AMS Servicing LLC, Nos. 11-40044-FDS, 11-40219-FDS, 2012 WL 220249 at *7 (D. Mass. Jan. 24, 2012). The claim that a defendant "offer[ed] to modify the loan according to terms that the [plaintiffs] found unacceptable . . . without more, is likewise insufficient to raise the claim to the level of a c. 93A violation." Id. at *2, 7 (D. Mass. Jan. 24, 2012).

"Which acts will be considered 'deceptive' [under c. 93A] is less clearly defined in the case law [but] some cases have held that an act or practice is deceptive 'if it could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted.'" Incase Inc. v. Timex Corp., 488 F.3d 46, 57 (1st Cir. 2007) (quoting Aspinall v. Philip Morris Cos., 442 Mass. 381, 394 (2004); see, e.g., 940 C.M.R. § 8.06 (stating that it is an "unfair or deceptive act or practice for a mortgage broker or lender to make any representation or statement of fact if the representation or statement is false or misleading or has the tendency or capacity to be misleading").[3] The Massachusetts Supreme Judicial Court has held that "[a] successful G.L. c. 93A action based on deceptive acts or practices does not require proof that a plaintiff relied on the representation, or that the defendant intended to deceive the plaintiff, or even knowledge on the part of the defendant that the representation was false." Aspinall, 442 Mass. at 394 (internal citations omitted).

> 2. *Cranmore Does Not Plausibly Allege that Wells Fargo Committed Unfair or Deceptive Acts With Respect to the 2008 Forbearance Agreement*

Notwithstanding Cranmore's allegation that "[a]t the end of the [2008 Forbearance Agreement] agreement period Defendant Wells Fargo did not grant Plaintiff the promised loan modification," ¶ 25, it is apparent from Cranmore's own pleading and from documents she submitted that approximately two weeks after her agreement had terminated "[o]n May 1, 2009, Wells Fargo sent Plaintiff a written 'loan modification agreement.'" ¶ 28; D. 16 Exh. 4 at 11-12.[4] She chose not to enter into it because its terms did not comport with her understanding of

---

[3] Although the title of Count I includes a reference to 940 C.M.R. § 8.06, Cranmore does not explain how Wells Fargo violated this regulation or how the regulation applies to the current case. The regulation does not provide a cause of action. Vicente v. FCDB SNPWL Trust, No. 11-11767-DPW, 2012 WL 474164, at *2 (D. Mass. Feb. 13, 2012).

[4] The Court also accepts as true that a few days earlier "[o]n April 26, 2009, . . . Wells Fargo notified Plaintiff in writing that her loan was in default by $3,189.23." ¶ 26; D. 14 Exh. 4

the loan modification terms previously and orally agreed to by Cranmore and Wells Fargo. ¶ 28. But Cranmore does not plausibly allege how the loan modification terms were different than what Wells Fargo had allegedly explained to her. Moreover, the 2008 Forbearance Agreement does not specify any terms on which a modification "will" later be offered; only an unspecified modification is promised. As to Cranmore's allegation that the terms of the loan modification were contradictory, ¶ 29, she offers only the claim that Wells Fargo "presented conflicting information about the interest rate and fees associated with the proposed modified plan." ¶ 67. Even if such cursory claims could be said to meet the plausibility standard for alleging unfair and deceptive acts, Cranmore has still failed to allege plausibly that she suffered injury as a result, also required for stating a c. 93A claim, when here, even crediting all of her allegations as true, she rejected the proposed loan modification agreement. Under these circumstances, Cranmore has not plausibly alleged that Wells Fargo violated Mass. Gen. L. c. 93A with respect to the 2008 Forbearance Agreement and loan modification offer. See, e.g., Maldonado, 2012 WL 220249, at *2, 7 (dismissing c. 93A claim where basis for allegation was that loan servicer offered a loan modification containing "unacceptably high" fees).

> 3. *Cranmore Plausibly Alleges that Wells Fargo Committed Deceptive Acts With Respect to the 2010 Forbearance Agreement*

Turning to the 2010 Forbearance Agreement, Cranmore alleges that Wells Fargo misled her into believing it was offering a route to a loan modification where that route never in fact existed. D. 21 ¶¶ 37-38, 48; Pl. Mot. to Amend, D. 16 Exh. 2 at 4. As Cranmore concedes, the 2010 Forbearance Agreement does not actually promise any future modification. Am. Compl.,

---

at 15 (notice of default). The document states that an amount of $116.01 was due by April 30, 2009 and $3,189.23 was due by May 26, 2009, well after the promised loan modification was offered. Id.; see also D. 16 Exh. 4 at 11 (letter dated May 1, 2009 offering loan modification with first payment due July 1, 2009).

D. 21 ¶¶ 39-47; Pl. Opp., D. 26 ¶ 4 (stating that under the terms of the 2010 Forbearance Agreement, "the lender is under no obligation to do anything").  Unlike the 2008 Forbearance Agreement, the 2010 Forbearance Agreement makes no promise that Cranmore's loan "will be modified" even if she completed her end of the agreement and stated only that if Cranmore made payments according to a schedule, that "[a]ny outstanding payments and fees will be reviewed for a loan modification."  D. 16 Exh. 4 at 5.  The language is contingent, stating that "if approved for a loan modification, based on investor guidelines . . . we will send you a loan modification agreement.  An additional contribution may be required."  D. 16 Exh. 4 at 5.

But the sum of Cranmore's pleadings and representations at oral argument are not that the agreement provided a modification, but that she was misled into believing it could, or did.  She asserts two allegedly deceptive acts:[5]  (1) Wells Fargo would have been able to determine at the start of its 2010 communications with Cranmore that it would never have been able to offer her a loan modification but held out the (false) possibility of a modification to Cranmore, and (2) that when Wells Fargo sent Cranmore a 2010 Forbearance Agreement, that Cranmore telephoned Wells Fargo for clarification of its meaning and was told that if she followed the agreement that

---

[5] In her opposition to dismiss, D. 26 at 2-3, and again at oral argument, Cranmore raised a new argument that the opening paragraph of the cover letters introducing Wells Fargo's Forbearance Agreements were deceptive.  But the Court analyzes Cranmore's c. 93A claim not only in the context of the existing pleadings or whether it would be futile to allow Cranmore to amend in light of her representations in opposition to the motion to dismiss, but also in light of the existing c. 93A demand letter that must have included a "reasonabl[e] descri[ption of] the unfair or deceptive act or practice relied upon" to form the basis of the action.  Mass. Gen. L. c. 93A, § 9(3).  "Specificity is required to describe the practices complained of, not the legal basis for the claim."  Casavant v. Norwegian Cruise Line Ltd., 460 Mass. 500, 506 (2011).  The demand letter must list "specific deceptive practices" on which a plaintiff relies.  Entrialgo v. Twin City Dodge, Inc., 368 Mass. 812, 812 (1975).  Here, even if the Court allows an amended pleading, it is too late to correct the demand letter to provide notice to Wells Fargo of additional alleged deceptive practices. Such notice is a "prerequisite to suit" in part to encourage settlement before bringing a lawsuit.  McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 217-18 (1st Cir. 2012) (quoting Entrialgo, 368 Mass. at 813).

Wells Fargo would modify her loan.[6] See D. 21 ¶¶ 50, 56; D. 4 at 13; see D. 21 ¶ 38, 56; D. 4 at 13. Cranmore's assertions boil down to a claim that these alleged actions by Wells Fargo would have "caused a person to act differently from the way he or she otherwise would have acted.'" Incase Inc., 488 F.3d at 57. Since this Court is evaluating this case on a motion to dismiss, it cannot say, as a matter of law, that Cranmore has not stated a claim as to "deceptive" act for the purposes of c. 93A.

        4.    *Cranmore Represents that She Was Damaged by Wells Fargo's Alleged Violation of Mass. Gen. L. c. 93A.*

Under c. 93A a plaintiff must plausibly allege economic injury. Rule v. Fort Dodge Animal Health, Inc., 607 F.3d 250, 255 (1st Cir. 2010). Cranmore's amended complaint fails in this regard. Nevertheless, in her filing opposing Defendants' motion to dismiss, D. 26, and in oral argument to the Court, Cranmore pointed to several forms of damage. On this record, the Court exercising its discretion will not dismiss the complaint, but orders Cranmore to amend her complaint to include the further factual allegations necessary to allege her damages. See Morris, 775 F. Supp. 2d at 263 (ordering plaintiffs to amend their complaint to remedy pleading deficiency where the plaintiff made "certain oral representations in court" warranting denial of motion to dismiss); Winter v. Chase Bank, No. 12-10109-DJC, 2013 WL 980607, at *5 (D. Mass. Mar. 12, 2013) (noting that "at least one judge in this district has opined that a party can be misled into continuing performance under a contractual obligation, and that resulting harm can perhaps provide a measure of damages").

---

[6] Although Wells Fargo argues that Cranmore has alleged Wells Fargo's intent related to its alleged actions in a conclusory manner, under Massachusetts c. 93A case law Cranmore does not need to prove same. "Whether conduct is deceptive is initially a question of fact, to be answered on an objective basis and not by the subjective measure . . . . A successful G.L. c. 93A action based on deceptive acts or practices does not require proof . . . that the defendant intended to deceive the plaintiff." Aspinall, 442 Mass. at 394 (citing Swanson v. Bankers Life Co., 389 Mass. 345, 349 (1983)).

    **C.   The Wrongful Foreclosure Claim Against US Bank (Count II) Is Dismissed and the Injunction is Dissolved**

At the December 12, 2012 hearing, Cranmore agreed to the dismissal without prejudice of Count II against US Bank. D. 26 ¶ 7. Cranmore also agreed to the dissolution of the injunction, D. 30 Exh. 1 at 2-3, prohibiting US Bank from foreclosing on the property provided such action was allowed without prejudice to any future rights she had in regard to any future foreclosure efforts. Accordingly, the Court dismisses Count II and dissolves the injunction. The Court also grants the request of US Bank for disbursement of any funds to US Bank that Cranmore paid into escrow as a condition of that injunction. See D. 30 at 4; D. 30 Exh. 1 at 3.

**IV.   Conclusion**

For the reasons stated above, the Court GRANTS in part and DENIES in part Wells Fargo's motion to dismiss, D. 23. The Court DISMISSES the portion of Count I related to the 2008 Forbearance Agreement. Per agreement of the parties, the Court DISMISSES Count II against US Bank and DISSOLVES the injunction preventing US Bank from foreclosing on Cranmore's property. The Court also ORDERS that all payments made by Cranmore into escrow pursuant to the terms of that injunction, D. 30 Exh. 1 at 3, be delivered to US Bank within 14 days of this Order. Further within that time, the Court ORDERS Cranmore to amend her complaint as to the factual allegations regarding her damage under Count I against Wells Fargo as to the 2010 Forbearance Agreement.

    **So Ordered.**

                                    /s/ Denise J. Casper
                                    United States District Judge